IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SHAHRYAR GILANI, | ) | |
| Arlington, Texas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-630 |
| | ) | |
| OFFICER JOHN D. MATTHEWS #5479 | ) | |
| in his individual capacity, | ) | |
| c/o KANSAS CITY, MISSOURI POLICE | ) | |
| DEPARTMENT, | ) | |
| KCPD Headquarters | ) | |
| 1125 Locust | ) | |
| Kansas City, Missouri 64106 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OFFICER FRANCIS D. COLLINS #5146 | ) | |
| in his individual capacity, | ) | |
| c/o KANSAS CITY, MISSOURI POLICE | ) | |
| DEPARTMENT, | ) | |
| KCPD Headquarters | ) | |
| 1125 Locust | ) | |
| Kansas City, Missouri 64106 | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW Shahryar Gilani, by his attorneys, and states and alleges the following

for his causes of action against Defendants John D. Matthews and Francis D. Collins:

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues raised herein.

## Nature of Action

1. Plaintiff Shahryar Gilani brings this lawsuit against Defendant Officer John D. Matthews #5479 and Defendant Officer Francis D. Collins #5146 alleging that he was wrongfully and unlawfully arrested in violation of the Fourteenth Amendment to the United States Constitution and that neither officer intervened in the actions of the other to prevent a violation of Gilani's rights. It is alleged that Defendants selectively enforced the law on the basis of ethnicity in violation of the Fourteenth Amendment's guarantee of equal protection under the law.

## Parties

2. Plaintiff Gilani is an American citizen, born in Texas, who currently resides in Arlington, Texas, but who, at all times relevant hereto, resided in the 600 block of East 70th Street, between Cherry Street and Holmes Road, in Kansas City, Missouri. His father is of Turkish descent and his mother is of Kurdish descent. Gilani's appearance is consistent with what would be considered stereotypical of a Middle Eastern adult male. Gilani was born in December, 1980, and at the time of the incident giving rise to this complaint, was thirty-two (32) years of age and was employed as a commodity trader.

3. Defendant Officer Matthews is a police officer with the City of Kansas City, Missouri Police Department. On information and belief, he is a resident of the State of Missouri. He may be served at his place of employment, *i.e.*, Kansas City Police Department Headquarters, 1125 Locust, Kansas City, Missouri. At all times relevant hereto, Defendant Matthews was acting under color of state law and he is sued in his individual capacity.

4. Defendant Officer Collins is a police officer with the City of Kansas City, Missouri

Police Department. On information and belief, he is a resident of the State of Missouri. He may be served at his place of employment, *i.e.*, Kansas City Police Department Headquarters, 1125 Locust, Kansas City, Missouri. At all times relevant hereto, Defendant Collins was acting under color of state law and he is sued in his individual capacity.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1443 and 1331.

6. The Court has jurisdiction over Defendants because the unlawful acts alleged in this Complaint were committed in Kansas City, Jackson County, Missouri, which lies within the Western District of Missouri.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiff Gilani's claims occurred in Kansas City, Jackson County, Missouri, which lies in the Western Division of the Western District of Missouri.

## FACTUAL ALLEGATIONS

8. On the night of June 26-27, 2013, Gilani was sitting outside his home on East 70th Street near Cherry Street talking on his cell phone. As he talked, he got up and began pacing and continued walking as he continued his conversation.

9. A little before 1:00 a.m. on June 27, 2013, the KCPD received a report of a "suspicious person" in the area of East 70th Street and Cherry Street in Kansas City, Missouri. Moments later, the dispatcher advised officers on patrol that there had been a report of a suspicious person. The dispatcher added that the person was a white male; was wearing all white clothing; and, had been walking between Oak and Holmes on 70th Street for the last fifteen (15) minutes. The dispatcher further speculated that the person was

3

possibly "casing".

10. A few minutes later, Officers John D. Matthews and Francis D. Collins responded to 70th and Cherry where they encountered Plaintiff Gilani. Although uniformed, neither officer made any attempt to identify himself; they simply stopped their vehicle in the middle of the road and got out of the car. Gilani was simultaneously walking in the street and talking on his cell phone. When the officers encountered Gilani, it seemed to Gilani that they expected him to drop what he was doing to acknowledge their presence, but he continued talking on his phone.

11. The officers could not help but observe Gilani's Middle Eastern appearance.

12. The officers detained Gilani almost instantaneously – in fact, before he could end his call. He later learned that the person with whom he had been talking became concerned because of the abrupt end to the conversation.

13. Gilani did not have identification with him, but he offered to retrieve his identification from his residence.

14. Within a few minutes, the officers had obtained Gilani's identity from him.

15. Using Charge Code 93012060, Officers Matthews and Collins arrested Gilani for the offense of failure to use a sidewalk in violation of Kansas City municipal ordinance 70-786(A),which provides:

> **Sec. 70-786. Pedestrians on streets or highways.**
>
> (a) Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.

16. The officers never actually saw Gilani commit a violation of the ordinance. While he was pacing and talking on the telephone, where there was a sidewalk, he used it.

4

Case 4:14-cv-00630-DGK   Document 1   Filed 07/16/14   Page 4 of 10

When the officers approached Gilani, he was walking from the intersection of Cherry and East 70th Streets where there *is* no sidewalk. The sidewalk begins right about the place where they approached Gilani but on the other side of the street.

17. On the KCPD Arrest Booking Sheet, Officer Matthews is listed as the "arresting Officer" and the "Booking Officer". Officer Matthews is also shown as the arresting officer on the "Arrest Information" tab of the Corrections Department's computer printouts where Officer Collins is shown as "Other Officer".

18. However, the ticket issued to Gilani (#111122421) was signed by Officer Collins, and Officer Collins is listed as the officer under "Officer Information" on the municipal court disposition sheet.

19. Officers Matthews and Collins summoned a paddy wagon, driven by Officer Daniel Hester, and had Gilani transported to jail and booked.

20. While still at the scene, Gilani observed that a Caucasian female walked by in the street and the officers neither questioned nor arrested her for walking in the street.

21. Although Gilani contacted two or three bondsmen from jail, they all told him that because the bond was so low, they did not want the business. Gilani offered to pay whatever the minimum was, but to no avail. He contacted a friend who, in turn, contacted Gilani's girlfriend.

22. Gilani's girlfriend initially went to the wrong jail and when she finally arrived at the correct jail at 11th and Locust Streets, downtown, she was told that Gilani could not be released since it was past a certain hour.

23. Gilani was jailed from 2:30 a.m. until approximately 3:30 p.m. (thirteen hours).

24. Gilani was taken to court where he initially entered a plea of not guilty. The judge questioned his plea and, in a friendly manner, implied that if Gilani pled guilty, he would be free to go. Gilani felt that it was important to get out of jail in order to minimize the amount of money he would lose by staying in jail and not being able to engage in his commodities trading, so he pled guilty to get out of jail.

25. Gilani was obliged to hire an attorney to get the guilty plea set aside and the charge dismissed.

26. Despite the fact that Gilani was arrested for an infraction that had nothing to do with driving, the officers "ran" a check on the license plates on Gilani's vehicle.

27. In addition to having to spend thirteen hours in jail, to plead guilty to get out of jail, and to pay counsel for setting aside the guilty plea and getting the charge dismissed, as a result of Defendants' Matthews and Collins' conduct, Gilani suffered damages in that he experienced apprehension, humiliation, embarrassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering.

28. The actions of Defendants Matthews and Collins were driven by an evil motive or intent, or a reckless or callous indifference to or disregard of Gilani's constitutional rights by reason of which, Gilani is entitled to an award of punitive damages in an amount to be proved at trial.

### COUNT I
### UNLAWFUL ARREST RESULTING FROM SELECTIVE ENFORCEMENT
### 42 U.S.C. § 1983
### Fourteenth Amendment to the Constitution of the United States

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28 as if fully set forth here.

30. Although they arrested Gilani for walking in the street, Defendants did not arrest a Caucasian female who was walking in the same street as Gilani, committing the same offense that Gilani allegedly had committed.

31. Ethnicity was not a criteria used to describe the reported suspicious person.

32. Because Defendants Matthews and Collins arrested Gilani but not the Caucasian female, their actions in arresting Gilani had a discriminatory effect and purpose.

33. Gilani's apparent Middle Eastern ethnicity was a motivating factor in their decision to arrest him; there was a discriminatory purpose to their arrest of Gilani.

34. The arrest of Gilani on the basis of ethnicity in violation of his Fourteenth Amendment right to equal protection caused Gilani to sustain damage as set forth, *supra* at ¶¶ 20-23, in that he was arrested; transported in handcuffs via paddy wagon to jail; was booked; required to remain in jail for thirteen hours; was required to plead guilty in order to get out of jail because he was arrested while not carrying his identification and his girlfriend was not allowed to procure the bond; was required to retain an attorney to set aside the guilty plea and get the charge against him dismissed; and, he experienced apprehension, humiliation, embarrassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering.

35. The arrest of Gilani in violation of his right to equal protection by Defendants Matthews and Collins was driven by an evil motive or intent, or a reckless or callous indifference to or disregard of Gilani's constitutional rights, by reason of which, Gilani is entitled to an award of punitive damages in an amount to be proved at trial.

36. Plaintiff Gilani is entitled to recover from Defendants Matthews and Collins

7

reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court, after a trial by jury of his claims, enter judgment against Defendants for his actual or nominal damages and for punitive or exemplary damages, as proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. 1988, for his costs herein, and for any such further legal and equitable relief as the Court deems appropriate.

### COUNT II
### FAILURE TO INTERVENE
### 42 U.S.C. § 1983

37. Plaintiff hereby incorporates by reference paragraphs 1 through 36 as if fully set forth here.

38. As alleged, *supra* in Count I, Defendants Matthews and Collins violated Gilani's Fourteenth Amendment right to equal protection when they arrested him because of his apparent Middle Eastern ethnicity for walking in the street instead of on a sidewalk when they did not arrest a Caucasian female for the same conduct, *i.e.*, walking in the street rather than on a sidewalk.

39. Neither Matthews nor Collins intervened to prevent the other from ethnically profiling and arresting Gilani because of his Middle Eastern appearance while not arresting a Caucasian female for the same behavior, in violation of his Fourteenth Amendment right to equal protection.

40. The failure of Defendants Matthews and Collins each to intervene to prevent the other from arresting Gilani on the basis of ethnicity in violation of his Fourteenth Amendment right to equal protection caused Gilani to sustain damage as set forth, *supra* at ¶¶

20-23, in that he was arrested; transported in handcuffs via paddy wagon to jail; was booked; required to remain in jail for thirteen hours; was required to plead guilty in order to get out of jail because he was arrested while not carrying his identification and his girlfriend was not allowed to procure the bond; was required to retain an attorney to set aside the guilty plea and get the charge against him dismissed; and, he experienced apprehension, humiliation, embarrassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering.

41. The failures of Defendants Matthews and Collins each to intervene and prevent the other from violating Gilani's rights were driven by an evil motive or intent, or a reckless or callous indifference to or disregard of Gilani's constitutional rights, by reason of which, Gilani is entitled to an award of punitive damages in an amount to be proved at trial.

42. Plaintiff Gilani is entitled to recover from Defendants Matthews and Collins reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court, after a trial by jury of his claims, enter judgment against Defendants for his actual or nominal damages and for punitive or exemplary damages, as proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. 1988, for his costs herein, and for any such further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

ARTHUR BENSON & ASSOCIATES

By_s/ Arthur A. Benson II_____
Arthur A. Benson II #21107

Jamie Kathryn Lansford #31133
4006 Central Avenue (Courier Zip: 64111)
P.O. Box 119007
Kansas City, Missouri 64171-9007
(816) 531-6565
(816) 531-6688 (telefacsimile)
abenson@bensonlaw.com
jlansford@bensonlaw.com

Attorneys for Plaintiff Gilani