IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHAHRYAR GILANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14-CV-630-DGK |
| | ) |
| OFFICER JOHN MATTHEWS, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING SUMMARY JUDGMENT

Defendants John Matthews ("Matthews") and Francis Collins ("Collins"), two Kansas City Police Department officers, cited and arrested Plaintiff Shahryar Gilani ("Gilani") for walking in the street where a sidewalk is provided. Gilani contends the officers actually arrested him because of his Middle Eastern ancestry, in violation of the Equal Protection Clause. He sued Matthews, Collins, Police Chief Darryl Forté ("Forté"), and members of the Board of Police Commissioners of Kansas City, Missouri ("the Board") for violating 42 U.S.C. § 1983.

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 54). As more fully explained below, Matthews and Collins are entitled to qualified immunity because there is no evidence that Gilani's ethnicity motivated them in any way. Without liability for them, the claims against Forté and the Board also fail. The motion is therefore GRANTED.

### Background[1]

Gilani, an American citizen, lived and worked in Kansas City, Missouri, as a commodities trader. His father is of Turkish descent, and his mother is of Kurdish descent. His

---

[1] This section omits facts properly controverted by Gilani, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to Gilani as the nonmoving party. *See Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

appearance is, as he puts it, "consistent with what would be considered stereotypical of a Middle Eastern adult male—his complexion is dark and he has black hair, brown eyes, and a dark beard" (Doc. 65 at 22). He considers his race to be white.

One night in June 2013, Gilani was walking around his neighborhood in Kansas City while talking on his cell phone. Wearing only white, he walked eastbound on the north side of East 70th Street before crossing Cherry Street. West of Cherry Street, East 70th Street generally has sidewalks on its north side. East of Cherry Street, it does not have sidewalks on the north side of the street but it does on the south side beginning several yards from the intersection. So when Gilani crossed Cherry Street to return home, he walked in the street because there was no sidewalk at that point on either side of the street. He intended to cross to the sidewalk on the south side as soon as it began.

An automobile approached him from the east and stopped. Because its headlights faced him, Gilani could not see the vehicle's markings. When its occupants emerged, he realized they were police officers and the car was a patrol vehicle. The officers—later identified as Matthews and Collins—greeted Gilani. Because he was still engrossed in his phone conversation, Gilani did not realize right away that the officers' activity was specific to him. Rather, he was trying to cross the street to reach the sidewalk on the south side.

Matthews and Collins were indeed trying to talk to Gilani. Someone in the neighborhood had called the Kansas City Police Department to report a suspicious person, identified as a white male wearing all white and walking on East 70th Street in Gilani's vicinity. The Department's dispatcher put out the call for service, adding that the suspicious person might be "casing" the block. The officers believed that this person they had just found in the road—Gilani—matched the description of the suspicious person.

When Gilani did not walk toward the officers, they shepherded him toward the car. Matthews patted down him for weapons and applied handcuffs. The officers told Gilani that he had violated a city ordinance prohibiting walking in the street where a sidewalk is provided. *See* Kan. City, Mo., Code of Ordinances § 70-786(a) ("Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."). Gilani explained that there was no sidewalk where he was walking, and he was heading to the nearest sidewalk. The officers refused to listen.

Finding him oppositional and defensive, the officers asked him for identification. Gilani did not have an identification card on him, but he had one in his nearby house. The officers refused to let Gilani retrieve it or call his roommate to bring it outside. Instead, they made him give verbal identification. Although he complied, the officers could not confirm his identity. They issued him a ticket then called a wagon to take him to jail to secure positive identification.[2]

Gilani pled not guilty to the charge, which was later set aside or dismissed.

Gilani, believing he was cited and arrested because of his ethnicity, offers statistics on how the Kansas City Police Department enforces the sidewalk ordinance, § 70-786(a). In 2014, the year after his arrest, the Department made 506 arrests under that ordinance, 378 of which were coded to indicate that the arrestee was black, meaning that about 74.7% of the Department's sidewalk-ordinance arrests in 2014 were of blacks. Kansas City as a whole had a black or African-American population of only 29.9% in 2010. Gilani also provides statistics on the relatively low arrest rates of women for violating § 70-786(a).

---

[2] During this incident, a white woman approached the officers while walking in the middle of the street; the officers let her go without citation or arrest. Because her ethnicity is undisputedly unknown, these facts are irrelevant to Gilani's claim that the officers treated him differently than they treated a non-Middle Easterner.

**Standard**

A moving party is entitled to summary judgment on a claim or defense if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the parties have satisfied their burdens of adducing and controverting evidence, the court views the resulting facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor without "resort to speculation." *Reed v. City of St. Charles*, 561 F.3d 788, 790–91 (8th Cir. 2009).

**Discussion**

Defendants move for summary judgment on all three counts in the amended complaint, each brought under 42 U.S.C. § 1983. Section 1983 creates a private cause of action for the violation of federal rights by an official acting under color of state law. Gilani claims Defendants violated § 1983 and denied his right to be free from unjustified ethnic discrimination by singling him out for citation and arrest.

Matthews and Collins assert the affirmative defense of qualified immunity. Forté seeks summary judgment on the basis that he committed no actions, much less unconstitutional ones. Insofar as Matthews and Collins are liable, the Board—essentially, their employer—asserts that under the *Monell* doctrine it is not liable for their actions.

I. **Because there is no evidence that Matthews and Collins were motivated by Gilani's ethnicity, the Court grants them qualified immunity.**

The Court first determines whether Matthews and Collins have qualified immunity against this lawsuit. Qualified immunity shields public officials from damage liability unless

4

they "violated clearly established statutory or constitutional standards of which a reasonable person would have known." *Johnson v. Crooks*, 326 F.3d 995, 996 (8th Cir. 2003).

This requires the Court to determine whether Matthews and Collins violated one of Gilani's constitutional rights. The Fourteenth Amendment protects citizens against unjustified, differential treatment based on their ethnicity. *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2417 (2013) (subjecting to strict scrutiny any government decision that "touch[es] upon an individual's race or ethnic background"). One type of differential treatment is selective enforcement of the law. *See United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996). "A person claiming unequal enforcement of a facially neutral [ordinance] must show both that the enforcement had a discriminatory effect, *and* that the enforcement was motivated by a discriminatory purpose." *Id.* (emphasis added).

"Proving discriminatory purpose is no simple task." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 511 (8th Cir. 2015). "To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on [ethnicity]." *Bell*, 86 F.3d at 823. "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one [ethnicity] than another." *Washington v. Davis*, 426 U.S. 229, 242 (1976). A statistical disparity in treatment alone may be sufficient in the "rare" case where it is "so 'gross' or 'stark' or 'dramatic' that it alone will constitute prima facie proof of purposeful discrimination." *Inmates of Neb. Penal & Corr. Complex v. Greenholtz*, 567 F.2d 1368, 1375 (8th Cir. 1977). A "clear pattern" that is "unexplainable on grounds other than [ethnicity]" may also supply proof of discrimination in "exceedingly rare cases." *Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009).

Nothing in the record demonstrates that Matthews and Collins were in any part motivated to cite Gilani because of his Middle Eastern ancestry. The sole purpose revealed by the record was to investigate a report of a suspicious person pacing on the street. Upon observing his municipal violation, they cited him accordingly. At most, they knew Gilani was of Middle Eastern descent by his physical appearance. But zero record evidence links this knowledge to their actions. *See Bell*, 86 F.3d at 823.

Gilani leans heavily on evidence suggesting that the officers' citation and arrest were arbitrary or a poor exercise of their enforcement discretion. He argues they even lacked probable cause to cite and arrest him. That may be. But there is simply nothing to establish that his *ethnicity* was a variable in that calculus. Given the officers' valid, ethnicity-neutral explanation for engaging him, Gilani's conclusion that the officers were motivated by his ethnicity cannot be reached by any process of elimination. *See Friends of Lake View*, 578 F.3d at 762 & n.12 (describing the high bar for finding patterns to be "unexplainable on grounds other than [ethnicity]"). The only way a reasonable jury could find an ethnicity-based purpose would be through sheer speculation, which is not enough to stave off summary judgment. *See Reed*, 561 F.3d at 791–92.

To the extent statistics can imply discriminatory purpose, Gilani fails to find any in support. He does not address the frequency with which Matthews and Collins cite Middle Easterners with violating the sidewalk ordinance. His statistics on how frequently the Department as a whole cites blacks and females are simply beside the point. *See Greenholtz*, 567 F.2d at 1376–79.

As the nonmoving party, Gilani must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."

*Johnson*, 326 F.3d at 1000. This he has failed to do. The Court grants qualified immunity, and thus summary judgment, to Matthews and Collins.[3]

## II. Because Forté has not committed any individual action, he warrants summary judgment.

The Court moves to the claims against Police Chief Forté. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Gilani does not identify a single action Forté took, much less an action that would give rise to § 1983 liability. Rather, he implies that Forté is liable for Matthews's and Collins's actions simply because Forté is the chief of police. Because this theory is not cognizable under § 1983, the Court grants summary judgment to Forté. *See id.*

## III. Because there are no underlying constitutional violations, the Board is entitled to summary judgment.

Finally, the Board moves for summary judgment on that ground that Gilani has failed to allege a cognizable claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Because there are no valid underlying claims, Gilani cannot maintain a claim against the Board as a matter of law. *See id.* Therefore, the Court grants summary judgment to the Board.

---

[3] Gilani also makes a claim against Matthews and Collins for failing to intervene. As he acknowledges, Eighth Circuit law precludes this claim. *See Livers v. Schenk*, 700 F.3d 340, 360 (8th Cir. 2012). Summary judgment is therefore granted to the officers on this claim.

## Conclusion

Defendants' Motion for Summary Judgment (Doc. 54) is GRANTED.  Judgment is granted to all Defendants on all claims.

**IT IS SO ORDERED.**

Date:  February 16, 2016                             /s/ Greg Kays
                                                            GREG KAYS, CHIEF JUDGE
                                                            UNITED STATES DISTRICT COURT